# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEVEN GRAVLEY, JR., | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 09-1326 |
| | ) | |
| v. | ) | Judge Lancaster |
| | ) | Magistrate Judge Bissoon |
| JEFFREY BEARD, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

## I. RECOMMENDATION

For the reasons that follow, it is respectfully recommended that Defendants' Motion to Dismiss (Doc. 24) be converted into a motion for summary judgment and that it be granted.

## II. REPORT

Plaintiff, Steven Gravley, Jr., is a state prisoner who alleges that his constitutional rights were violated when he was placed in "waist restraints" on November 6, 2008, after he attempted suicide, and that he was denied bedding and other necessities during the 14 days that followed (Doc. 1, pp. 2-3). Plaintiff also alleges that his personal property was taken and either lost or destroyed during this time, and that this was done in retaliation for a prior lawsuit he filed (Id., pp. 6-7). Attached to Plaintiff's Complaint are two Misconduct Reports dated November 12, 2008, charging him with making two separate threats against corrections officers (Doc. 3-1, pp. 2-3). A copy of Grievance No. 251524 also is provided, wherein Plaintiff complains that he was missing "3 books, 2 roll on deodorants, one lotion, a business magazine/catalog, pictures [and] important legal work" after his property was removed from his cell following his suicide attempt (Doc. 3-3, p. 2). Plaintiff asserts a variety of federal and state law claims that will be discussed in more detail below.

Defendants have filed a motion to dismiss (Doc. 24) that the Court converted into a motion for summary judgment. Plaintiff has responded (Doc. 34) and the motion is ripe.

A.  **Applicable Standard**

A party's burden in response to a well-pleaded motion for summary judgment is to present Aspecific facts showing that there is a *genuine issue for trial*" (Fed. Rule Civ. Proc. 56(e) (emphasis added)), or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). The inquiry, then, involves determining "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id., 477 U.S. at 251-52.

B.  **Analysis**

1.  **Exhaustion of Administrative Remedies.**

Defendants first move for summary judgment on the basis that Plaintiff failed to exhaust administrative remedies with regard to any of his claims. The Prisoner Litigation Reform Act ("PLRA") requires that a plaintiff-inmate **must** exhaust his administrative remedies before filing a civil action. 42 U.S.C.A. § 1997e(a); Booth v. Churner, 206 F.3d 289, 300 (3d Cir. 2000), aff'd, 532 U.S. 731 (2001). There is no "futility" exception to the administrative exhaustion requirement. Ahmed v. Dragovich, 297 F.3d 201, 206 (3d Cir. 2002) (citing Nyhuis v. Reno, 204 F.3d 65, 78 (3d Cir. 2000)). The PLRA also requires "proper exhaustion," meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules. Woodford v. Ngo, 548 U.S. 81, 90-91 (2006) ("Proper exhaustion demands

compliance with an agency's deadlines and other critical procedural rules."). This is the functional equivalent of the procedural default requirement in the habeas context. Spruill v. Gillis, 372 F.3d 218, 228-29 (3d Cir. 2004). While a prisoner must comply with prison procedures, "compliance with the administrative remedy scheme will be satisfactory if it is substantial." Nyhuis, 204 F.3d at 77-78.

The Pennsylvania Department of Corrections ("DOC") Consolidated Inmate Review System provides for three levels of administrative review of inmate grievances: (1) the initial grievance is submitted to the Facility Grievance Coordinator; (2) an intermediate level of appeal lies to the Facility Manager (Superintendent); and (3) a final appeal must be sent to the Secretary's Office of Inmate Grievances and Appeals. Commonwealth of Pennsylvania, Department of Corrections, Consolidated Inmate Grievance Review System, Policy No. DC-ADM 804 § VI. See also Booth, supra, 206 F.3d at 293 n. 2 (outlining the grievance review process).

Grievance No. 251524 is attached as an exhibit to Plaintiff's Complaint (Doc. 25-1, pp. 5-6). Plaintiff complains about the loss of his property in that grievance, and Defendants have presented evidence that this grievance was appealed to final review (Doc. 25-1, p. 5). The Court finds that Plaintiff's due process claim concerning the loss of personal property was properly exhausted. Likewise, Plaintiff's assertion that he was denied necessary legal materials also is included in Grievance No. 251524, and administrative remedies have been exhausted with respect to that claim.

Plaintiff also, however, asserts that his property was taken from him in retaliation for a prior lawsuit he filed against prison officials. Retaliation is a separate claim and prisoners must raise a specific claim of retaliation in their prison grievance in order to exhaust administrative

3

remedies. Hoffenberg v. Provost, 154 Fed.Appx. 307, 311 (3d Cir. 2005) (retaliation claim must be presented and exhausted as separate claim from underlying assault claim). Plaintiff did not raise a retaliation claim in Grievance No. 251524 concerning the seizure of his property, and that claim is not properly before the Court.

The Court must now determine whether Plaintiff has exhausted administrative remedies with respect to his conditions of confinement claims arising from the use of waist restraints and the various restrictions placed upon him during the two weeks following his suicide attempt (November 6-20, 2008). Plaintiff asserts for the first time in his response to Defendants' motion that he filed a second grievance at the same time he filed Grievance No. 251524, and that he included in this second grievance all of his conditions of confinement claims, and that he named all of the Defendants in that grievance (Doc. 34-2, p. 2). Plaintiff states that this grievance was dismissed on the basis that the restrictions placed upon him following his suicide attempt constituted a disciplinary matter that must be appealed through DC-ADM 801 (Doc. 34, p. 8). Notably, Plaintiff does not attach a copy of the alleged second grievance. Plaintiff does not allege that he attempted to appeal the dismissal of his grievance, but instead argues that the grievance coordinator would have simply denied his appeal (Doc. 34, p. 8).

Defendants have presented a declaration from Leilani Sears, who is employed in the Department of Corrections' Office of Inmate Grievances and Appeals (Doc. 25-1). Attached to Ms. Sears's declaration is a portion of Plaintiff's grievance file showing all grievances filed from August 12, 2008, through January 12, 2010 (Doc. 25-1, pp. 5-8), establishing that Plaintiff did not file a second grievance contemporaneously with Grievance No. 251524 as he asserts. On November 3, 2008, Plaintiff filed Grievance No. 248599 complaining about "food" (Doc. 25-1, p. 5). Plaintiff next filed Grievance No. 251524 on November 28, 2008, and he complained

about the loss of his property (Id.). Plaintiff filed no further grievances until December 15, 2008, when he filed a grievance addressing to "harassment" and another grievance involving "problems w/staff" (Doc. 25-1, p. 6). Plaintiff has not presented any credible evidence that he submitted a second grievance on November 28, 2008. Indeed, Plaintiff clearly contrived this as a means to avoid Defendants' argument that he failed to exhaust administrative remedies.

However, even if the Court accepts Plaintiff's version of events, i.e., even if he had presented credible evidence that he filed a second grievance on November 28, 2008, he still has admittedly failed to exhaust the administrative appeals process. Plaintiff concedes that he did not attempt to appeal the initial dismissal of the alleged conditions of confinement grievance because the grievance coordinator would simply have denied his appeal (Doc. 34, p. 8). The "prison grievance procedures supply the yardstick" in this respect, Spruill, 372 F.3d at 231, and Gravley's failure to seek administrative review of the rejection of his grievance results is a procedural default of his claims during the administrative appeal process. Gravley's argument that it would have been futile for him to appeal the denial of his grievance is unavailing because there is no futility exception to the administrative exhaustion requirement. Ahmed, 297 F.3d at 206. Plaintiff's conditions of confinement claims are not cognizable.

Plaintiff also asserts that two false misconduct reports were filed on November 12, 2008. Defendants do not argue that Plaintiff failed to exhaust administrative remedies with respect to his misconduct proceedings. Hence, Plaintiff's claims concerning allegedly fabricated misconducts will be addressed on the merits.

### 2.    Official Capacity Claims.

Defendants assert that Plaintiff's claims against them in their "official capacities" are the functional equivalent of claims against the Commonwealth of Pennsylvania and, hence, are

barred. Indeed, a lawsuit against the Commonwealth of Pennsylvania would be barred by the Eleventh Amendment. Quern v. Jordan, 440 U.S. 332, 340-341 (1979). When individual Commonwealth employees are sued in their official capacity, the action is considered to be against the Commonwealth itself. See Kentucky v. Graham, 473 U.S. 159, 166 (1985). The immunities available to the individual Defendants sued in their official capacity are the same as those possessed by the Commonwealth and, accordingly, Defendants are entitled to summary judgment with respect to Plaintiff's "official capacity" Section 1983 claims. Id., at 167.

### 3. Fourteenth Amendment claim for destroyed property.

Plaintiff's rights under the Due Process Clause in the context of a seizure or destruction of personal property are limited to a claim that no adequate post-deprivation remedy exists. Hudson v. Farmer, 468 U.S. 517, 533 (1984). The Court of Appeals for the Third Circuit has held that the Pennsylvania Department of Corrections' grievance procedure "provides an adequate post-deprivation remedy." Durham v. Department of Corrections, 173 Fed.Appx. 154, 157 (3d Cir. 2006). As such, Defendants are entitled to summary judgment with respect to Plaintiff's due process claim.

### 4. Denial of Access to Courts.

Plaintiff alleges that Defendants' actions deprived him of documents that were necessary for him to respond to a motion in Civil Action No. 08-1125. Plaintiff now concedes, however, that he was, in fact, able to file a response in that case (Doc. 34, p. 12). Plaintiff's denial of access to the courts claim fails because he cannot establish that he suffered any prejudice, i.e., he has not established that he lost any motion or claim as a result of Defendants' actions. Christopher v. Harbury, 536 U.S. 403, 415-17 (2002).

### 5. False Misconduct Charges.

Plaintiff alleges that he was falsely accused of threatening officers on two separate occasions on November 12, 2008 (Misconduct No. A775347, Doc. 3-1, p. 2; Misconduct No. 775349, Doc. 3-1, p. 3). However, a false misconduct charge does not itself qualify as an Eighth Amendment violation. Booth v. Pence, 354 F. Supp.2d 553, 559 (E. D. Pa. 2005). Nor is a due process claim stated when a prisoner alleges that misconduct charges were fabricated. Smith v. Mensinger, 293 F.3d 641, 653-654 (3d Cir. 2002) (due process is satisfied where an inmate is afforded an opportunity to be heard and to defend against the allegedly falsified evidence and groundless misconduct reports). Indeed, all that is required of a misconduct proceeding is that the inmate be afforded an opportunity to be heard and to defend against the allegedly falsified evidence and groundless misconduct reports. Id. Plaintiff does not claim that he was denied a misconduct hearing, or that he was denied the opportunity to present a defense to either of the two misconduct charges at issue.

Although Plaintiff does not specifically challenge the quantum of proof at the misconduct hearings, it should be noted that the requirements of due process are satisfied if some evidence supports the decision to sanction a prisoner. Superintendent v. Hill, 472 U.S. 445, 455 (1985)). In fact, the misconduct proceedings were clearly a swearing contest between corrections officers who reported that Plaintiff made threatening remarks and Plaintiff who denied doing so. Clearly, "some evidence" supports the decision to sanction with respect to both misconduct reports. An unfavorable decision, standing alone, is not a denial of due process. Griffin v. Spratt, 768 F. Supp. 153, 158 (E. D. Pa. 1991) rev'd in part on other grounds, 969 F.2d 16 (3d Cir. 1992). Defendants are entitled to summary judgment on this claim as well.

### 6. Retaliation.

Plaintiff also asserts that Defendants issued the two misconduct reports against him in retaliation for a previous lawsuit he filed against other Department of Corrections employees. "Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution actionable under section 1983." See White v. Napoleon, 897 F.2d 103, 111-12 (3d Cir. 1990). "Government actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." Allah v. Seiverling, 229 F.3d 220, 224-25 (3d Cir. 2000); Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003). In order to state a *prima facie* case of retaliation, a prisoner must demonstrate:

1) the conduct in which he was engaged was constitutionally protected;

2) he suffered "adverse action" at the hands of prison officials; and

3) his constitutionally protected conduct was a substantial or motivating factor in the decisions to discipline him.

Carter v. McGrady, 292 F.3d 152, 157-58 (3d Cir. 2002) quoting Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001).

Where a *prima facie* case of retaliation has been made, the burden then shifts to the Defendants to demonstrate by a preponderance of the evidence that their actions would have been the same even if Plaintiff were not engaging in the constitutionally protected activities. Rauser, 241 F.3d at 334. Because retaliation claims can easily be fabricated, district courts must view prisoners' retaliation claims with sufficient skepticism to avoid becoming entangled in every disciplinary action taken against a prisoner. See Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996); Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995), cert. denied, 516 U.S. 1084 (1996); Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).

Defendants have presented evidence that Plaintiff's misconduct offenses were supported by legitimate violations of prison regulations, i.e., they argue that they can carry their burden of establishing that the same actions would have been taken even absent Plaintiff's prior lawsuit. See Carter, 292 F.3d at 159 (3d Cir. 2002) (no genuine issue of material fact that jailhouse lawyer would have been disciplined notwithstanding his jailhouse lawyering). In evaluating a prison official's opinion, "[p]rison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Bell v. Wolfish, 441 U.S. 520, 547 (1979). "It is the hearing examiner's providence, and not this court's, to gauge the credibility of evidence and witnesses at a misconduct hearing." Rauso v. Vaughn, 2000 WL 873285, *8 (E.D.Pa. 2000) (Scuderi, M.J.) (citing Massachusetts Correctional Inst. v. Hill, 472 U.S. 445, 455-56 (1985) (holding that the requirement of a written statement for the reasons relied upon by the disciplinary board "does not imply that a disciplinary board's factual findings ... are subject to second-guessing upon review")).

In this case, Defendants have presented sufficient evidence for the Court to conclude that the misconducts would have issued notwithstanding Plaintiff's prior litigation. Carter v. McGrady, supra (even if prison officials were motivated by animus to jailhouse lawyers, there was sufficient evidence of the plaintiff's misconduct offenses to conclude that the misconducts would have issued notwithstanding his jailhouse lawyering). Therefore, Defendants are entitled to summary judgment on Plaintiff's retaliation claim.

### 7. Conspiracy.

To state a claim of conspiracy pursuant to 42 U.S.C. § 1985(3), a plaintiff must allege that "racial, or otherwise class-based, invidiously discriminatory animus lay behind the

defendants' actions," and must "set forth facts from which a conspiratorial agreement between the defendants can be inferred." Parrott v. Abramsen, 200 Fed. Appx. 163, 165 (3d Cir. 2006); see also Griffin v. Breckenridge, 403 U.S. 88, 102 (1971). "[M]ere conclusory allegations of deprivations of constitutional rights are insufficient to state a § 1985(3) claim." D.R. by L.R. v. Middle Bucks Area Vocational Technical Sch., 972 F.2d 1364, 1377 (3d Cir. 1992). It is imperative, therefore, for Plaintiff to "set forth facts from which a conspiratorial agreement between the defendants can be inferred." Parrott, 200 Fed.Appx. at 165 (citing Forbes v. Reno, 893 F.Supp. 476, 483 (W.D.Pa. 1995), aff'd, 91 F.3d 123 (3d Cir. 1996)) (table). Plaintiff makes only the most bare of allegations concerning the existence of a conspiracy in this case, and does not present facts sufficient to infer a conspiratorial agreement between Defendants. Defendants are entitled to summary judgment on Plaintiff's federal conspiracy claim.

    **7. State law claims.**

All of the remaining claims raised by Plaintiff are premised upon state law (state law conspiracy, defamation, intentional infliction of emotional distress and negligence). After all of the claims with an independent basis of federal jurisdiction have been dismissed, a District Court has discretion with respect to the exercise of jurisdiction over pendent state law claims. Arbaugh v. Y & H Corp., 546 U.S. 500 (2006). Here, Defendants are entitled to summary judgment on all of Plaintiff's federal claims. Significantly, this has occurred at an early stage in the proceeding, and the Court discerns no reason to exercise discretionary jurisdiction over the Plaintiff's pendent state law claims. See Seamon v. Algarin, 2007 WL 2404732 (E.D.Pa. 2007) (dismissing Section 1983 claims, and declining to exercise pendent jurisdiction over state law medical malpractice claims).

## III. CONCLUSION

For the reasons set out in this Report and Recommendation, it is respectfully recommended that Defendants' Motion to Dismiss be converted into a Motion for Summary Judgment (Doc. 24) and that the motion be granted.

In accordance with the Magistrate's Act, 28 U.S.C. § 636 (b)(1)(B) and (C), and Rule 72.D.2 of the Local Rules for Magistrates, objections to this Report and Recommendation are due by September 14, 2010.

August 31, 2010                                s/Cathy Bissoon
                                               Cathy Bissoon
                                               United States Magistrate Judge


cc:
STEVEN GRAVLEY, JR.
GH7466
S.C.I. at Fayette
50 Overlook Drive
Labelle, PA 15450